UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GOMES FERREIRA, <br> Plaintiff, <br> v. <br> ALEJANDRO MAYORKAS, et al., <br> Defendants. | Case No. 24-cv-01820-DMR <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 33, 35 |

Plaintiff Daniel Gomes Ferreira filed this case on September 20, 2023,[1] against the Secretary of the Department of Homeland Security, the Director of United States Citizenship and Immigration Services ("USCIS"), and the Associate Director of USCIS Service Center Operations Directorate (together, "Defendants"). Ferreira alleges that Defendants incorrectly and/or arbitrarily and capriciously denied his two I-539 Applications to Extend/Change Nonimmigrant Status, his I-485 Application to Adjust Status, and his four I-290B motions to reopen or reconsider denial of his I-485 application. He seeks declaratory relief and review of agency action pursuant to the Administrative Procedure Act ("APA").

Ferreira filed his motion for summary judgment on August 13, 2024. [Docket No. 33 ("Pl.'s Mot.").] Defendants filed an opposition as well as a cross-motion for summary judgment on September 13, 2024. [Docket No. 35 ("Defs.' Mot.").] Ferreira failed to oppose Defendants' motion or file a reply in his own motion. This matter is suitable for determination without oral argument. *See* Civ. L.R. 7-1(b).

---

[1] Ferreira commenced this action in the United States District Court for the District of Columbia [Docket No. 1 ("Compl.")], after which the parties agreed to transfer it to this district, where Ferreira resides [Docket Nos. 14, 15].

For the following reasons, Ferreira's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

## I. STATUTORY AND REGULATORY BACKGROUND

### A. Temporary B-2 "Pleasure" Visas and I-539 Applications

"B" visas are available for nonimmigrant foreigners who are "visiting the United States temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B). Temporary visitors receiving B visas must "intend[] to leave the United States at the end of the temporary stay" and may receive a B-1 visa for business or a B-2 visa for "pleasure," defined as "legitimate activities of a recreational character, including tourism, amusement, visits with friends or relatives, rest, medical treatment, and activities of a fraternal, social, or service nature." 22 C.F.R. § 41.31(a), (b)(2). B-2 visitors may be admitted for an initial minimum stay of six months but no more than one year and "may be granted extensions of temporary stay in increments of not more than six months each." 8 C.F.R. §§ 214.2(b)(1), (2).

Once admitted to the United States, B-2 visitors seeking to extend their stay can submit a Form I-539 Application to Extend/Change Nonimmigrant Status, which generally must be filed before the expiration of the B-2 visa. *Id.* §§ 214.1(c)(2), (4) ("An extension of stay may not be approved for an applicant who failed to maintain the previously accorded status or where such status expired before the application or petition was filed, . . ."). If USCIS grants the I-539 application, the visitor must again agree to depart the United States when the extension expires. *Id.* § 214.1(a)(3)(ii) ("At the time of admission or extension of stay, every nonimmigrant alien must also agree to depart the United States at the expiration of his or her authorized period of admission or extension of stay, . . ."). For all immigration purposes, "[a]n applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1).

### B. Lawful Permanent Residence via EB-2 Visas, I-140 Petitions, and I-485 Applications

Lawful permanent resident status (colloquially, a "green card") is available to prospective immigrants to the United States in several ways. Those "who are members of the professions

2

1  holding advanced degrees or their equivalent" or who have "exceptional ability in the science, arts,
2  or business" may seek employment-based "EB-2" visas that may provide lawful permanent
3  resident status through a multi-step process. 8 U.S.C. § 1153(b)(2)(A). First, their employer must
4  obtain a "labor certification" from the Department of Labor; next, the employer can file an I-140
5  petition with USCIS to classify the prospective immigrant-employee as a qualifying foreign
6  national. *See* 8 U.S.C. § 1182(a)(5)(A); 8 C.F.R. § 204.5(k). An exception to this rule exists for
7  prospective immigrant-employees with a national interest waiver pursuant to 8 U.S.C.
8  § 1153(b)(2)(B)(i), which can be obtained by submitting an I-140 petition directly to USCIS. If
9  USCIS approves the I-140 petition, the prospective immigrant-employee may be eligible to file an
10 I-485 Application to Register Permanent Resident or Adjust Status to become a lawful permanent
11 resident of the United States so long as they meet certain eligibility requirements. *See* 8 U.S.C.
12 § 1255(a) (noting that status "may be adjusted by the Attorney General, in his discretion and under
13 such regulations as he may prescribe"); *Ayanian v. Garland*, 64 F.4th 1074, 1081 n.3 (9th Cir.
14 2023). Prospective lawful permanent residents may also file their I-485 application concurrently
15 with an I-140 petition. *See* 8 C.F.R. § 245.2(a)(2)(i)(C).

16     "The Immigration and Nationality Act declares certain categories of non-citizens ineligible
17 to become lawful permanent residents, including anyone who has failed to maintain
18 lawful immigration status continuously since entering the United States." *Peters v. Barr*, 954 F.3d
19 1238, 1240 (9th Cir. 2020) (citing 8 U.S.C. § 1255(c)(2)). As relevant here, an individual is
20 ineligible for lawful permanent residency if he "failed (other than through no fault of his own or
21 for technical reasons) to maintain continuously a lawful status since entry into the United
22 States." 8 U.S.C. § 1255(c)(2). The regulation implementing this statute explains that a
23 "technical violation" can "result[] from inaction of [USCIS] (as for example, where an applicant
24 establishes that he or she properly filed a timely request to maintain status and [USCIS] has not
25 yet acted on that request)." *Attias v. Crandall*, 968 F.3d 931, 933 (9th Cir. 2020) (quoting 8
26 C.F.R. § 245.1(d)(2)(ii)). As the Ninth Circuit has explained, the regulations further provide that a
27 "technical violation" "occurs only if the alien's application to maintain lawful status is ultimately
28 granted." *Id.* (citing 8 C.F.R. § 245.1(d)(1)). Section 1255(k) provides an exception for those

3

eligible for certain employment-related visas, whereby a lapse in their unlawful status will not bar an adjustment of status to lawful permanent resident so long as the lapse is not more than 180 days—a "grace period" for those applicants. *Peters*, 954 F.3d at 1240; 8 U.S.C. § 1255(k).

## II.   FACTUAL BACKGROUND

The following facts are undisputed except where noted.[2] Ferreira is a Brazilian national who last entered the United States on September 19, 2017, with a B-2 visa that authorized him to stay in the United States for six months, until March 18, 2018. [Compl. ¶ 21.] On March 7, 2018, Ferreira timely filed an I-539 application to extend his B-2 status for another six months (Receipt No. WAC1890174417). [*Id.* ¶ 22; CAR part 2, Docket No. 27-3 at 80-88, 92-94.] Ferreira wrote in his application that he sought to remain in the United States "to visit places we have not been before" and because he "really like[d] the American culture" and staying in the United States would afford "an excellent opportunity to practice [his] English." [CAR part 2, Docket No. 27-3 at 92.] Ferreira also wrote that if his application was denied he would "leave the country immediately." [*Id.*]

On September 18, 2018, with no decision yet made on his first I-539 application, Ferreira filed a second I-539 application to extend his time in the United States by six more months, until March 18, 2019 (Receipt No. WAC1890395048). [CAR part 1, Docket No. 27-2 at 28-45.] In his application, Ferreira repeated that he planned "to visit places that we have not been before," that he "really like[d] the American culture," and that staying would provide "an excellent opportunity to practice [his] English." [*Id.* at 29.] While not mentioned in his second I-539 application, Ferreira married his spouse (also a Brazilian national) a week prior on September 11, 2018 in Redwood City, California. [Compl. ¶ 23; CAR part 6, Docket No. 27-7 at 392.]

On March 4, 2019, still awaiting decisions on his I-539 applications, Ferreira concurrently filed an I-140 petition under the EB-2 national interest waiver category [CAR part 6, Docket No. 27-7 at 415-49] and an I-485 Application for Adjustment of Status [*id.* at 386-414]. On July 23,

---

[2] Only Defendants' motion includes citations to evidence in the administrative record [Docket No. 27, Certified Administrative Record ("CAR")]. Because Ferreira did not oppose Defendants' motion, the court treats as undisputed the facts asserted by Defendants if they are supported by citations to the CAR.

4

2019, USCIS issued Notices of Intent to Deny ("NOIDs") both of Ferreira's I-539 applications on the basis that he had not established the temporariness of his stay in the United States. [CAR part 1, Docket No. 27-2 at 65-67 (first I-539), 25-27 (second I-539).] The NOIDs gave Ferreira until August 25, 2019 to respond. [*Id.* at 66, 26.]

On August 27, 2019, Ferreira responded to each of the NOIDs stating that at the time he filed his I-539 extensions, he intended to remain in the United States temporarily. [CAR part 1, Docket No. 27-2 at 58-63 (first I-539), 18-24 (second I-539).] Ferreira's responses also explained that his stay in the United States would not affect his foreign residency; that he had an employment opportunity waiting for him in Brazil; and that his supporting documents established that it was more likely than not that he intended to return to Brazil upon completion of his temporary stay in the United States. [*Id.*] Both of Ferreira's responses attached a copy of a one-page employment letter from Brazilian company Sakai Engenharia, dated August 1, 2019, describing that the company gave him a job offer to begin employment in December 2018 but that it was postponed because he had not returned to Brazil. [*Id.* at 63, 23.]

On November 26, 2019, USCIS issued Decisions denying each of Ferreira's I-539 applications. [*Id.* at 46-49 (first I-539), 1-3 (second I-539).] For the first application, USCIS found that Ferreira had not established that he intended to depart from the United States and deemed the letter from Sakai Engenharia to be unpersuasive. [*Id.* at 47.] For the second application, USCIS stated that Ferreira had failed to maintain lawful status in the United States because he overstayed his initial B-2 visa without justification. [*Id.* at 2.] Both Decisions noted that they could not be appealed but that Ferreira could file a motion using Form I-290B within 33 days to reopen or reconsider them if he met the standard for doing so. [*Id.* at 48, 3.] Ferreira did not file a motion to reopen or reconsider either of his I-539 applications.

On September 10, 2019, USCIS sent a Request for Evidence relating to Ferreira's I-140 petition [CAR part 4, Docket No. 27-5 at 236-39], and Ferreira submitted additional information in response on December 3, 2019 [*id.* at 240-57]. On January 6, 2020, USCIS approved Ferreira's I-140 petition under a national interest waiver with an EB-2 classification. [CAR part 6, Docket No. 27-7 at 415-23.] On May 13, 2020, USCIS issued a Request for Evidence relating to

Ferreira's I-485 application, seeking evidence that Ferreira had maintained his nonimmigrant status in the United States, a completed medical examination form, and two passport-style photographs. [CAR part 5, Docket No. 27-6 at 319-21.] Ferreira responded to the Request for Evidence on July 20, 2020, stating that he maintained status by submitting his I-539 applications but had not heard back from USCIS, pointing to USCIS's delay in processing those applications, and again cited his intent of temporariness of stay at the time of completing the I-539 applications. [*Id.* at 322-29 (citing 8 U.S.C. § 1184).] Ferreira indicated that he also submitted the medical examination Form I-693 and photographs requested by USCIS. [*Id.* at 329.]

On September 22, 2020, USCIS issued a Decision denying Ferreira's I-485 application, finding that Ferreira had failed to maintain a lawful status for 350 days from March 19, 2018 (the date on which his B-2 visa expired) to the date he filed his I-485 application. [*Id.* at 303-06.] The Decision also explained that any motion to reopen or reconsider had to be filed within 33 days. On November 20, 2020, Ferreira filed an I-290B motion to reopen or reconsider (USCIS I-290B Receipt No. LIN2190122985). [CAR part 6, Docket No. 27-5 at 280-99; CAR part 7, Docket No. 27-6 at 300-02.] On April 2, 2021, USCIS denied Ferreira's I-290B motion, explaining that the evidence Ferreira submitted did not overcome the grounds for denial of the I-485 because "an application to extend or change status does not confer lawful status [] until it is approved." [CAR part 6, Docket No. 27-5 at 272-73.] Ferreira filed three further I-290B motions—Receipt Notices IOE0912601335 (filed May 27, 2021) [CAR part 8, Docket No. 27-9 at 503-60], IOE0915248822 (filed September 27, 2021) [*id.* at 561-75; CAR part 9, Docket No. 27-10 at 575-608], and IOE0915248822 (filed February 4, 2022) [CAR part 9, Docket No. 27-10 at 618-82]. USCIS dismissed each of Ferreira's further I-290B motions. [CAR part 8, Docket No. 27-9 at 552-54 (second motion); CAR part 9, Docket No. 27-10 at 609-14 (third motion), 674-75 (fourth motion).]

### III. LEGAL STANDARDS

#### A. Judicial Review Under 5 U.S.C. § 706(2)

Section 706 of the APA governs judicial review of administrative decisions and allows a court to review and set aside an agency's final action if the action was "arbitrary, capricious, an

6

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court may find abuse of discretion by an agency "if there is no evidence to support the decision or if the decision is based on an improper understanding of the law." *Kazarian v. U.S. Citizenship & Immigration Svcs.*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal quotation marks and citation omitted). "To determine whether an agency violated the arbitrary and capricious standard, [the] court must determine whether the agency articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001) (citation omitted). In order for the court to confirm the agency's decision as rationally connected to the facts, the agency must have considered "substantial evidence" in support of its decision. *Nakamoto v. Ashcroft*, 363 F.3d 874, 881-82 (9th Cir. 2004). The substantial evidence standard is "deferential" and requires affirmation of the agency decision "unless the evidence is so compelling that no reasonable fact finder could fail to find the facts were as [plaintiff] alleged." *Id.* (citing *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003)).

Under the APA, a court may also review and set aside an agency action that was "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The Ninth Circuit has construed claims under this section to refer to "agency rulemaking" and "the adequacy of the agency's notice and comment procedure." *Maddern v. Austin*, No. 21-cv-1298-MMA (BLM), 2022 WL 13811712, at *16 (S.D. Cal. Oct. 20, 2022) (discussing *California v. Azar*, 911 F.3d 558 (9th Cir. 2018)); *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1075-76 (9th Cir. 2006). "Unlike substantive challenges, however, our review of an agency's procedural compliance is exacting, yet limited. . . . We review de novo but are limited to ensuring that statutorily prescribed procedures have been followed." *Kern Cnty. Farm Bureau*, 450 F.3d at 1076 (internal quotation marks and citations omitted).

### B.     Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See*

7

*Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *See Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine issue of fact exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

Under the APA, a court can review agency decisions on a motion for summary judgment. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985). The reviewing court "is not required to resolve any facts in a review of an administrative proceeding." *Id.* at 769. Instead, the court is limited to the evidence in the administrative record, with few exceptions for discovery. *See McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. July 13, 2007). The district court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co.*, 753 F.2d at 769.

## IV. DISCUSSION

Ferreira broadly argues that, in denying his various applications, USCIS's actions (1) were arbitrary and capricious; (2) failed to follow required procedures; (3) were not supported by substantial evidence; and (4) violated Ferreira's right to procedural due process. [Pl.'s Mot. at 9-16.] Ferreira sets out a timeline of his applications with specific dates and receipt numbers, but otherwise makes no reference whatsoever to the administrative record. Instead, Ferreira asserts in generalized terms that USCIS's decisions and notices "were nearly identical and lacked substantive analysis, indicating that USCIS did not adequately consider the specific evidence and arguments presented by Plaintiff." [Pl.'s Mot. at 10; *see also id.* at 11 (same), 15 (same).] Ferreira further contends without citation to evidence and in broad, conclusory terms that USCIS's decisions "relied on generic, pre-formulated responses that failed to consider the unique facts and

evidence presented." [*Id.* at 11; *see also id.* at 14 (describing "USCIS's reliance on boilerplate decisions that did not consider the specific evidence and arguments presented").]

### A. Jurisdiction to Review USCIS's Denial of an I-485 Application

Defendants argue as an initial matter that this court lacks jurisdiction to review USCIS's denial of Ferreira's I-485 application because, pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), courts lack jurisdiction to review USCIS decisions regarding adjustment-of-status applications made pursuant to 8 U.S.C. § 1255. [Defs.' Mot. at 12-13.]

Section 1252(a)(2)(B)(i) prohibits courts' "review of *any* judgment regarding the granting of relief under § 1255" and is not restricted "to certain kinds of decisions." *Patel v. Garland*, 596 U.S. 328, 338-39 (2022) (emphasis in original). Following *Patel*, the Ninth Circuit has further confirmed that "[8 U.S.C.] § 1252(a)(2)(B)(i) strips district courts of jurisdiction to hear a plaintiff's APA claim when that claim challenges an agency's individualized denial of an application for adjustment of status." *Nakka v. U.S. Citizenship & Immigration Servs.*, 111 F.4th 995, 1015 (9th Cir. 2024) (discussing post-*Patel* cases in other circuits). This approach is not new; prior to *Patel*, this circuit was in accord that district courts lack jurisdiction to review decisions involving adjustments of status under 8 U.S.C. § 1255. *See, e.g.*, *Hassan v. Chertoff*, 593 F.3d 785, 788-89 (9th Cir. 2008) ("[J]udicial review of the denial of an adjustment of status application—a decision governed by 8 U.S.C. § 1255—is expressly precluded by 8 U.S.C. § 1252(a)(2)(B)(i)."); *Hosseini v. Gonzales*, 471 F.3d 953, 956 (9th Cir. 2006) ("We lack jurisdiction to review the [Board of Immigration Appeals]'s denial of Hosseini's adjustment of status claim because the BIA alternatively denied relief as a matter of discretion." (citing 8 U.S.C. § 1252(a)(2)(B)(i))). As Ferreira did not file an opposition to Defendants' cross-motion, he concedes the jurisdictional argument. The court therefore concludes that it lacks jurisdiction to review USCIS's denial of Plaintiff's I-485 application and related I-290B motions.

### B. USCIS's Denials of Ferreira's I-539 Applications

With respect to the July 23, 2019 NOIDs for Ferreira's two I-539 applications, Ferreira correctly notes that USCIS provided the same reasons for denial in both. However, Ferreira proffers no evidence to suggest that they "lacked substantive analysis." The NOIDs both

9

explained that Ferreira did not establish temporariness of stay and that USCIS "may terminate an alien's authorized period of stay or deny a request for an extension of stay for a B nonimmigrant when the agency becomes aware the alien intends to remain in the United States indefinitely." [CAR part 1, Docket No. 27-2 at 65 (first extension), 25 (second extension).] The NOIDs explained that Ferreira's pending Form I-485 indicated that he intended "to remain permanently, not temporarily, in the United States" and noted that Ferreira appeared to wish to "use the B nonimmigrant classification to remain in a valid nonimmigrant status" while he awaited a decision on his adjustment application. [*Id.* at 66, 26.] Both NOIDs also explained that Ferreira had not established foreign residence in Brazil. [*Id.*] The NOIDs cited relevant statutes and regulations to support their conclusions and invited a response by August 25, 2019. [*Id.*]

Ferreira asserts multiple times that his August 27, 2019 responses to the NOIDs "submitted evidence, including an employment offer letter from Sakai Engenharia, demonstrating [his] intent to return to Brazil," which Ferreira maintains "USCIS failed to consider" despite it being "crucial in establishing [his] temporary intent and non-immigrant status." [Pl.'s Mot. at 10, 12, 15.] However, the administrative record shows that Ferreira submitted only a single piece of evidence—the Sakai Engenharia letter—which USCIS reviewed and found unpersuasive. [CAR part 1, Docket No. 27-2 at 63, 23.] In its November 26, 2019 Decision regarding Ferreira's first I-539 application, USCIS considered the Sakai Engenharia letter and wrote: "It appears that [Ferreira] ha[s] not accepted the job offer from Sakai Engenharia" and has "no intention to depart the United States and to abandon [his] foreign residence." [*Id.* at 47.] As USCIS's Decision observed, and as the record shows, Ferreira did not submit any further evidence to support the statements he asserted in response to the NOIDs: "You indicated that you made travel plans to depart the United States in December 2018. However, no documentation was submitted such as airline purchased tickets, itinerary, etc., to show that you in fact had made plans to depart the United States back in December 2018." [*Id.*] USCIS concluded based on the evidence that Ferreira had not shown that he intended to stay in the United States temporarily as a B-2 visitor and denied his first I-539 application. [*Id.*]

In its November 26, 2019 Decision regarding Ferreira's second I-539 application, USCIS

10

explained that at the time he filed his application on September 18, 2018, Ferreira had not maintained his nonimmigrant status given the expiration of his B-2 visa on March 18, 2018. [*Id.* at 2.] The Decision applied the relevant regulation to explain that denial was based on Ferreira's failure to maintain his status and included both a "warning concerning unlawful presence" and an "overstay warning." [*Id.* (citing 8 C.F.R. § 214.1(c)(4)).]

After review of the administrative record, the court concludes that the NOIDs and Decisions regarding Ferreira's two I-539 applications do not constitute "arbitrary and capricious" agency action. In each instance, USCIS "articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n*, 273 F.3d at 1236. The court also finds that USCIS considered "substantial evidence" in support of its decisions. *See Nakamoto*, 363 F.3d at 882. Nothing in the administrative record demonstrates that "USCIS failed to consider relevant facts," and Ferreira's conclusory arguments without citation—for example, that "[t]he decision notices were nearly identical and lacked substantive analysis"—do not persuade otherwise.

Ferreira additionally argues without citation to case law or the administrative record that because "USCIS took almost a year and a half to process his pending I-539 applications," "Plaintiff had no choice but to wait, as leaving the U.S. would have resulted in the applications being considered abandoned." [Pl.'s Mot. at 11.] Defendants contend that the applicable regulation provides that an application may be denied as abandoned if the applicant does not respond to a NOID or Request for Evidence by the deadlines provided, or if the applicant does not appear for an in-person interview, appointment, or process. 8 C.F.R. § 103.2(b)(13)(i), (ii). Thus, Defendants argue, Ferreira could have departed the United States with a pending I-539 application with no negative consequence. [Defs.' Mot. at 17-19.] Regardless, Ferreira does not argue that USCIS's delay in deciding his I-539 applications was itself violative of the APA, and the court need not evaluate whether Ferreira "had no choice but to" remain in the United States while his I-539 applications were pending.

### C.   Ferreira's Claims Under 5 U.S.C. § 706(2)(D)

Defendants argue that the court should not consider any claim under 5 U.S.C. § 706(2)(D) because the complaint only alleges a violation of APA § 706(2)(A). [Defs.' Mot. at 20 (citing

11

Compl. ¶ 78).] The court agrees. The complaint contains two references to the APA, 5 U.S.C. § 706. First, the complaint cites to "5 U.S.C. 706(2)" (no further subsection) while quoting exclusively from § 706(2)(A) [*id.* ¶ 64] and describes that subsection's "standard of review" by quoting Supreme Court precedent about the "arbitrary and capricious" standard of review that applies to § 706(2)(A) [*id.* ¶ 65 (quoting *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020))]. In one other instance, the complaint alleges, in full: "USCIS' decision is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and it should be held unlawful and set aside, under 5 U.S.C. § 706(2)(A) and (D)." [*Id.* ¶ 78.] This allegation also quotes exclusively from § 706(2)(A) with only a passing reference to § 706(2)(D). The court concludes that the complaint's stray reference to 5 U.S.C. § 706(2)(D) is insufficient to put Defendants on fair and adequate notice that Ferreira was alleging a claim under § 706(2)(D).

Even were the court to consider a claim under § 706(2)(D), Ferreira's argument that USCIS did not follow "required procedures" is entirely conclusory and unsupported. As Defendants assert, "a claim under § 706(2)(D) refers to agency rulemaking and whether notice-and-comment procedure was properly followed." [*See* Defs.' Mot. at 20 (citing *Kern Cnty. Farm Bureau*, 450 F.3d at 1076).] "Assuming Plaintiff may bring a claim for failure to observe the required procedures, procedural irregularities do not automatically invalidate an agency's decision. In claiming that agency action should be set aside for procedural irregularity under 5. U.S.C. § 706(2)(D), it is Plaintiff's burden to show that prejudice has resulted." *Maddern*, 2022 WL 13811712, at *16 (internal quotation marks and citation omitted). Here, Ferreira has not made any allegations or argument, let alone cited to case law or record evidence, to support a claim that USCIS failed to adhere to its own procedures, nor does Ferreira make any specific assertions about prejudice resulting from USCIS's purported failure to follow its own rulemaking or notice-and-comment procedures. In any event, "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted). The court accordingly does not credit Ferreira's argument under 5 U.S.C. § 706(2)(D).

**D.     Procedural Due Process**

Ferreira argues that USCIS's various actions violated procedural due process. Ferreira describes his "significant interest in obtaining lawful permanent resident status in the United States," the denial of which "directly impact[s] his ability to remain in the U.S. and pursue his professional and personal goals." [Pl.'s Mot. at 14-16.] Once again, Ferreira failed to assert a due process claim in his complaint; at most the request for relief section asks the court to issue an order declaring, among other things, that Defendants' actions were "violative of procedural due process." [Compl. at 15-16.] Ferreira cannot raise for the first time in his motion for summary judgment a claim that he did not plead. *See Wasco Prods., Inc.*, 435 F.3d at 992.

Even construing the complaint as having alleged a procedural due process claim, Ferreira's argument does not succeed on the merits. The Fifth Amendment provides that an individual shall not "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (citation omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Ferreira's motion does not assert with any specificity that he has "more than an abstract need or desire" for the relief he has sought. Ferreira's due process arguments recite the same conclusory assertions, without citation or evidence, as the rest of his motion: that USCIS relied "on boilerplate decisions that did not consider the specific evidence" and also that UCIS failed to provide Ferreira "a meaningful opportunity to be heard." [Pl.'s Mot. at 14-15.] Ferreira asserts that "[p]rocedural due process requires that agencies consider all relevant evidence before making a decision" [*id.* at 16 (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)), but he once again does not point to any evidence that USCIS purportedly failed to consider in making its decisions on his various applications and motions.

On the record before it, the court finds that Ferreira failed to state a claim for procedural due process and rejects his broad, conclusory arguments seeking to raise this claim belatedly.

13

## V. CONCLUSION

For the foregoing reasons, Ferreira's motion for summary judgment is denied. Defendants' cross-motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: February 18, 2025

Donna M. Ryu
Chief Magistrate Judge